NEAL S. SALISIAN, SBN 240277
neal.salisian@salisianlee.com
GLENN R. COFFMAN, SBN 305669
glenn.coffman@salisianlee.com
JARED T. DENSEN, SBN 325164
jared.densen@salisianlee.com
**SALISIAN | LEE LLP**
550 South Hope Street, Suite 750
Los Angeles, California 90071-2924
Telephone:   (213) 622-9100
Facsimile:   (800) 622-9145

MARISA D. POULOS (SBN 197904)
marisa.poulos@balboacapital.com
**BALBOA CAPITAL CORPORATION**
575 Anton Boulevard, 12th Floor
Costa Mesa, California 92626
Tel: (949) 399-6303

Attorneys for Plaintiff
BALBOA CAPITAL CORPORATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALBOA CAPITAL CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>COMPREHENSIVE HEALTH X5 INC., a Florida profit corporation, doing business as COMPREHENSIVE HEALTH; AARON WEBB, an individual; RYAN NAUGHTIN, an individual,<br><br>Defendants. | Case No.:<br><br>**BALBOA CAPITAL CORPORATION'S COMPLAINT FOR:**<br><br>**1. BREACH OF EQUIPMENT FINANCING AGREEMENT**<br><br>**2. BREACH OF PERSONAL GUARANTY (2 COUNTS)** |

COMPLAINT

Plaintiff Balboa Capital Corporation, a California corporation ("Plaintiff" or "Balboa"), alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Balboa Capital Corporation is a California corporation, which has its principal place of business in the State of California, County of Orange ("Plaintiff" or "Balboa"). Balboa is a wholly-owned division of Ameris Bank, a Georgia state-chartered banking corporation.

2. Defendant Comprehensive Health X5 Inc. ("Comprehensive Health"), doing business as Comprehensive Health, is, and at all times relevant to this action was, a Florida profit corporation with its principal place of business in the County of Orange, State of Florida.

3. Defendant Aaron Webb ("Webb"), an individual, is, and at all times relevant to this action was, a resident of the County of Orange, State of Florida, and was an officer, member, director, shareholder, agent and/or owner of Defendant Comprehensive Health. Webb is a citizen of the State of Florida, and based on information and belief, including the Driver's License submitted by Webb to Balboa, Webb is domiciled in Ocoee, Florida.

4. Defendant Ryan Naughtin ("Naughtin"), an individual, is, and at all times relevant to this action was, a resident of the County of Orange, State of Florida and was an officer, member, director, shareholder, agent and/or owner of Defendant Comprehensive Health. Naughtin is a citizen of the State of Florida, and based on information and belief, including the Driver's License submitted by Naughtin to Balboa, Naughtin is domiciled in Orlando, Florida.

5. Plaintiff is informed and believes, and thereon alleges, that each Defendant, directly or indirectly, or through agents or other persons, was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and

believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about the foregoing, and that each Defendant authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other Defendants.

6. The obligations sued upon herein are commercial in nature and the Complaint herein is not subject to the provisions of California Civil Code Sections 1801, *et seq.* (Unruh Retail Installment Sales Act) and/or California Civil Code Sections 2981, *et seq.* (Rees-Levering Motor Vehicle Sales and Finance Act).

7. Pursuant to the Equipment Financing Agreement and Personal Guaranties described herein, Defendants agreed those documents would be governed by the laws of the State of California. In addition, the Equipment Financing Agreement provides, in pertinent part, as follows:

> **GENERAL.** This Agreement will be governed and construed under the laws of the State of California without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. You submit to the exclusive and mandatory jurisdiction of CA and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement.

8. <u>Jurisdiction</u>. This Court has jurisdiction over the case pursuant to 28 U.S.C. §1332(a).

9. Specifically, as described above, Balboa is a citizen of the States of Georgia and California; Comprehensive Health is a citizen of the State of Florida; and each of Webb and Naughtin is a citizen of the State of Florida. As such, none of the Defendants are citizens of California or Georgia, and there exists complete diversity of citizenship between the parties. Lastly, the amount in controversy exceeds $75,000.

10. <u>Venue</u>.  This case is properly venued in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and in the Southern Division pursuant to 28 U.S.C. §84(c)(3).

11. All officers of Balboa, including all witnesses and documents, are located in the State of California. The transactions at issue in this Action occurred in the State of California.

## FIRST CAUSE OF ACTION
## (Breach of Equipment Financing Agreement)
## (Against Comprehensive Health)

12. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

13. Prior to September 2021, Balboa is informed and believes that Comprehensive Health initiated and engaged with Cutera, Inc. - FP, 3240 Bayshore Blvd, Brisbane, CA 94005 (the "Equipment Vendor"), in order to coordinate the acquisition and financing of certain equipment (hereinafter referred to as the "Collateral") for its business.  The Equipment Vendor worked with Comprehensive Health in the selection of the Collateral and in coordinating its delivery.

14. Thereafter, Balboa is informed and believes, and therefore alleges, that the Equipment Vendor initiated and coordinated submission of Defendant's electronic credit application to Balboa and other financial institutions.  Upon review, Comprehensive Health concluded that Balboa offered agreeable terms to finance the Collateral commensurate with its requirements.  Thereafter, the Equipment Vendor accumulated and submitted to Balboa the requisite signatories, documentation and financial information from the Defendant to finance the Collateral being supplied by the Equipment Vendor.

15. On or about September 3, 2021, Comprehensive Health executed a certain written Equipment Financing Agreement No. 321868-001 (the "EFA"), under the terms of which Balboa loaned to Comprehensive Health the sum of One

Hundred Sixty-Five Thousand Six Hundred Seventy Dollars and Thirty-Five Cents ($165,670.35) in order to finance the Collateral for its business. The EFA required Comprehensive Health to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $3,949.78, payable on the 14th day of each month beginning November 14, 2021. A true and correct copy of the EFA is attached as **Exhibit A** and is incorporated here by reference.

16. The last payment received by Balboa was credited toward the monthly payment due for March 14, 2024. Therefore, on or about April 14, 2024, Comprehensive Health breached the EFA by failing to make the monthly payment due on that date. Defendant Comprehensive Health's failure to make timely payments is a default under the terms of the EFA.

17. In accordance with the EFA, and as a proximate result of Comprehensive Health's default thereunder, Balboa declared the entire balance of the payments under the EFA to be immediately due and payable to Balboa. Therefore, there became due the sum of $136,810.52. These amounts are exclusive of interest, attorneys' fees and costs, no portion of which sum has been paid by Comprehensive Health.

18. In addition, the terms of the EFA provide that Comprehensive Health is liable to Balboa for late charges on all payments not made in a timely manner. As of the date of the filing of Balboa's Complaint, late charges in the sum of $1,421.92, are now due and owing.

19. Balboa has performed all of the terms, conditions, and covenants required to be performed by it under the terms of the EFA, except as excused or prevented by the conduct of Comprehensive Health.

20. As a proximate result of Comprehensive Health's breach of the EFA, Balboa has been damaged in the total sum of **$138,232.44**, plus prejudgment interest from April 14, 2024, until the entry of judgment herein.

21. Further, under the terms of the EFA, Comprehensive Health promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Comprehensive Health.

22. The EFA also provides Balboa the remedy of possession of the Collateral and to obtain an order that Balboa may, in accordance with applicable state law, sell the remaining the Collateral and apply the net proceeds from the sale to the remaining loan balance. Alternatively, if possession cannot be had, Balboa is entitled to recover the value of the Collateral.

## SECOND CAUSE OF ACTION

**(Breach of Personal Guaranty)**

**(Against Webb)**

23. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

24. Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Comprehensive Health, Webb guaranteed, in writing, the payment of the then existing and future indebtedness due and owing to Balboa under the terms of the EFA. A true and correct copy of the written Personal Guaranty signed by Webb ("Guaranty No. 1") is attached as **Exhibit A** (at page 1 of 3) and incorporated herein by reference.

25. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of Guaranty No. 1, except as excused or prevented by the conduct of Webb.

26. Following a default of Comprehensive Health under the terms of the EFA, Balboa demanded Webb make the payments required under the EFA. Webb failed to meet Guaranty No. 1 obligations and make the payments required under the EFA.

27. Pursuant to the terms of Guaranty No. 1, the sum of $138,232.44, plus prejudgment interest from April 14, 2024, is due and payable to Balboa from Webb. This Complaint, in addition to previous demands, shall constitute further demand upon Webb to pay the entire indebtedness due and owing from Comprehensive Health to Balboa under the terms of the EFA.

28. Under the terms of Guaranty No. 1, Webb promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA and Guaranty No. 1. Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Webb.

### THIRD CAUSE OF ACTION
### (Breach of Personal Guaranty)
### (Against Naughtin)

29. Balboa alleges and incorporates by reference each and every allegation contained above, inclusive, as though each were fully set forth here.

30. Concurrent with the execution of the EFA, and in order to induce Balboa to enter into the EFA with Comprehensive Health, Naughtin guaranteed, in writing, the payment of the then existing and future indebtedness due and owing to Balboa under the terms of the EFA. A true and correct copy of the written Personal Guaranty signed by Naughtin ("Guaranty No. 2") is attached as **Exhibit A (at page 1 of 3)** and incorporated herein by reference.

31. Balboa has performed all the terms, conditions, and covenants required to be performed by Balboa under the terms of Guaranty No. 2, except as excused or prevented by the conduct of Naughtin.

32. Following a default of Comprehensive Health under the terms of the EFA, Balboa demanded Naughtin make the payments required under the EFA. Naughtin failed to meet Guaranty No. 2 obligations and make the payments required under the EFA.

33.     Pursuant to the terms of Guaranty No. 2, the sum of $138,232.44, plus prejudgment interest from April 14, 2024, is due and payable to Balboa from Naughtin.  This Complaint, in addition to previous demands, shall constitute further demand upon Naughtin to pay the entire indebtedness due and owing from Comprehensive Health to Balboa under the terms of the EFA.

34.     Under the terms of Guaranty No. 2, Naughtin promised to pay all costs, including reasonable attorneys' fees, incurred by Balboa in the enforcement of the EFA and Guaranty No. 2.  Therefore, Balboa requests the Court award Balboa its reasonable attorneys' fees and costs as against Naughtin.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Balboa prays for judgment against Defendants, and each of them, as follows:

**On All Causes of Action:**

1.     The sum $138,232.44;

2.     Prejudgment interest from April 14, 2024 to the date of entry of judgment;

3.     Late charges and non-sufficient charges in an amount to be proven at trial;

4.     An order to recover possession of the Collateral which is the subject of the EFA, or if the Collateral cannot be delivered, for its reasonable value according to proof;

5.     Reasonable attorneys' fees and costs;

6.     Costs of suit as provided by law; and

//
//
//
//
//

7. Such other and further relief that the Court considers proper.

DATED: June 18, 2024

SALISIAN | LEE LLP

By: _____
Neal S. Salisian
Glenn Coffman
Jared T. Densen

Attorneys for Plaintiff
BALBOA CAPITAL CORPORATION